# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

PATTEA TACUBA,

                Plaintiff,

v.

BAXTER CREDIT UNION,

                Defendant.

Case No. 21-CV-618-JPS

**ORDER**

On July 6, 2021, Defendant Baxter Credit Union ("BCU") filed a motion to stay proceedings and compel arbitration. (Docket #11). This motion is now fully briefed, and, for the reasons stated below, the Court will grant the motion in part.

**1.    BACKGROUND**

This action arises from Plaintiff Pattea Tacuba's ("Tacuba") purchase of a vehicle in 2017. (Docket #1). Upon selecting a vehicle, Tacuba and the dealership, Auto World, entered into a retail installment sales contract ("RISC") for a $25,000 loan to purchase the vehicle. (*Id.* at 4–5). Tacuba took possession of the vehicle, and Auto World immediately assigned or sold its interest in the RISC to BCU. (*Id.* at 5). Tacuba began making payments, however, at some point, it appears she stopped doing so. In February 2021, at BCU's direction, the vehicle was repossessed for nonpayment. (*Id.*) Tacuba initiated the present suit on May 18, 2021, alleging that BCU was improperly operating in Wisconsin in violation of Wisconsin Statute sections 218, 409 and 427, as well as the Wisconsin Consumer Act. (Docket #1).

On July 6, 2021, BCU filed a motion requesting that the Court stay the present proceedings and compel arbitration. (Docket #11). According to BCU, every person who receives financing from BCU is required to join BCU's Credit Union. (*Id.* at 3). Tacuba was no exception, and, on November 13, 2017, she signed BCU's Membership Enrollment Form[1] (the "Enrollment"). (*Id.*) Immediately above Tacuba's signature on the Enrollment is the following clause:

> **Member Product and Services**: By signing below you acknowledge that you have received and agreed to the terms and conditions contained on both sides of this form and in the Deposit Account Agreement . . . .

(Docket #11-1 at 5).

The Deposit Account Agreement, in turn, contains an Arbitration Agreement that states, in pertinent part, as follows:

> Except if you opt out as provided below, you or we may elect to arbitrate any claim or dispute between you and us arising from or related in any way to this Agreement or to any account, product, or service you have or have had with us. This arbitration provision applies regardless if the claim or dispute is based in contract, tort, or otherwise. If arbitration is elected, any claim or dispute will be resolved by individual (and not class-wide) binding arbitration instead of a lawsuit or other resolution in court. This arbitration provision does not apply to any individual action brought in small claims court (or your state court equivalent). Any arbitration hearing will be within 50 miles of your residence at the time the arbitration is commenced, unless otherwise mutually agreed.
>
> . . . .

---

[1] BCU attached a copy of the Enrollment to its submissions. (Docket #11-1 at 4–5). The Enrollment bears the name "Patricia Tacuba." It is unclear why Plaintiff's name on the Enrollment and her name in this suit do not match, but the parties do not make issue of this discrepancy.

**YOU MAY OPT OUT OF THIS ARBITRATION PROVISION AND THE CLASS ACTION WAIVER BY CONTACTING US VIA THE MESSAGE CENTER IN ONLINE BANKING, CALLING US TOLL FREE AT 1-800-388-7000, OR SENDING A WRITTEN REQUEST TO US AT BCU, ATTN: LEGAL DEPARTMENT, 340 N. MILWAUKEE, VERNON HILLS, ILLINOIS 60061 (WHICH MUST INCLUDE YOUR NAME, ADDRESS AND ACCOUNT NUMBER). NOTICE MUST BE RECEIVED WITHIN SIXTY (60) DAYS AFTER THIS AGREEMENT WAS DELIVERED OR OTHERWISE MADE AVAILABLE TO YOU. OPTING OUT OF ARBITRATION WILL NOT TERMINATE OR EFFECT ANY OTHER RIGHTS YOU OR WE HAVE UNDER THIS AGREEMENT. IF YOU OPT OUT, YOU MUST OPT OUT OF ALL TERMS OF THIS ARBITRATION PROVISION. YOU MAY NOT OPT OUT OF ONLY CERTAIN TERMS.**

(*Id.* at 29). BCU never received an opt-out request from Tacuba. (Docket #11 at 4).

## 2. ANALYSIS

The Federal Arbitration Act (the "FAA"), 9 U.S.C. § 1 *et seq.*, "is a congressional declaration of a liberal federal policy favoring arbitration agreements." *Continental Cas. Co. v. Am. Nat'l Ins. Co.*, 417 F.3d 727, 730–31 (7th Cir. 2005) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 24 (1983)). Accordingly, "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Id.* To further its purpose, "[t]he FAA . . . provides for stays of proceedings in federal district courts when an issue in the proceeding is referable to arbitration, § 3, and for orders compelling arbitration when one party has failed, neglected, or refused to comply with an arbitration agreement, § 4." *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 25 (1991). According to the FAA,

> [a] written provision in any . . . contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2.

"Under the [FAA], arbitration may be compelled if the following three elements are shown: [(1)] a written agreement to arbitrate, [(2)] a dispute within the scope of the arbitration agreement, and [(3)] a refusal to arbitrate." *Zurich Am. Ins. Co. v. Watts Indus., Inc.*, 417 F.3d 682, 687 (7th Cir. 2005). The need for this Order establishes the third element. The Court will discuss elements one and two in turn.

### 2.1 Validity of the Arbitration Agreement

A party may establish that a valid arbitration agreement exists by presenting and authenticating the arbitration agreement entered into between the parties. *See, e.g.*, *Conway v. Done Rite Recovery Servs., Inc.*, Case No. 14-CV-5182, 2015 WL 1989665, at *3 (N.D. Ill. Apr. 30, 2015) ("A party moving to compel arbitration must 'produce evidence sufficient to support a finding that the [arbitration agreement] is what the proponent claims it is.'" (quoting Fed. R. Evid. 901(a))). "The bar for authentication of an arbitration agreement is not high." *Pearson v. United Debt Holdings, LLC*, 123 F. Supp. 3d 1070, 1073 (N.D. Ill. 2015). A party seeking to compel arbitration must only satisfy Federal Rule of Evidence 901(a), and present evidence sufficient to support a finding that the arbitration agreement "is what the proponent claims it is." *Id.*; Fed. R. Evid. 901(a). Once the agreement is properly authenticated, the agreement to arbitrate can be presumed based on a signature. *Conway* 2015 WL 1989665, at *3; *see also Janiga v. Questar*

*Capital Corp.*, 615 F.3d 735, 743 (7th Cir. 2010) (finding that plaintiff agreed to arbitration by providing signature).

Here, BCU has provided sufficient evidence as to authenticate the Enrollment and Deposit Account Agreement (which contains the Arbitration Agreement). Fed. R. Evid. 901(a). In his affidavit, Davi Allen, the Vice President of Consumer Lending at BCU, asserts that the Tacuba's Enrollment, like all of BCU's enrollment forms, was "kept in the course of BCU's regularly conducted business activities." (Docket #11-1 at 1). He further states that he retrieved a copy of the Enrollment from BCU's electronic records. (*Id.*) He states that the Deposit Account Agreement was similarly stored and retrieved. (*Id.* at 2). Copies of both documents are attached to Allen's affidavit. Moreover, Tacuba's signature appears on the Enrollment, which incorporates by reference, the Deposit Account Agreement (and, therein, the Arbitration Agreement).[2] Taken together, this evidence is sufficient to show that the Enrollment and the Deposit Account Agreement are what BCU contend they are. *See, e.g., Conway* 2015 WL 1989665, at *3 (reviewing a party's affidavits and the contract to determine whether the moving party cleared Rule 901(a)). The Court will now discuss

---

[2]Tacuba states that "BCU seeks to compel arbitration through the most circuitous of routes: an arbitration provision embedded in terms and conditions incorporated by reference into a document entirely unrelated to the underlying transaction to which BCU was not a party." (Docket #12 at 1). However, both the Seventh Circuit and Wisconsin courts recognize that terms to a contract may be incorporated by reference. *See Cent. Wis. Elec. Co-op. v. Hoffman*, 890 N.W.2d 48 (recognizing the incorporation by reference doctrine); *R.J. O'Brien & Assocs., Inc. v. Pipkin*, 64 F.3d 257, 260 (7th Cir. 1995) ("A contract, however, need not contain an explicit arbitration clause if it validly incorporates by reference an arbitration clause in another document.").

whether Tacuba has adequately challenged the validity of the arbitration agreement.

"Challenges to the validity of arbitration agreements 'upon such grounds as exist at law or in equity for the revocation of any contract' can be divided into two types." *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 444 (2006). The first type "challenges specifically the validity of the agreement to arbitrate." *Id.* The second type "challenges the contract as a whole, either on a ground that directly affects the entire agreement (*e.g.*, the agreement was fraudulently induced), or on the ground that the illegality of one of the contract's provisions renders the whole contract invalid." *Id.* In 2006, the Supreme Court unambiguously stated that, "unless the challenge is to the arbitration clause itself, the issue of the contract's validity is considered by the arbitrator in the first instance." *Id.* at 445–46. In so holding, the Court followed its earlier decision in *Prima Paint Corp. v. Flood & Conklin Manufacturing Co.*, 388 U.S. 395, 403–04 (1967), wherein the Court held that, in applying the FAA, arbitration clauses are severable from the contract in which they are contained, and a challenge to the contract as a whole does not affect the agreement to arbitrate. *Buckeye Check Cashing, Inc.*, 546 U.S. at 444–46.

In the introductory paragraph of her response, Tacuba states that "the arbitration provision relied on by BCU is void and unenforceable under Wisconsin law." (Docket #12 at 1). However, the cornerstone of Tacuba's substantive opposition to arbitration (as well as of the contentions in her complaint) is that BCU allegedly was unable to conduct business in Wisconsin. Because of this, Tacuba argues, the *entire* Enrollment— including the incorporated Arbitration Agreement—is void, illegal in formation, and/or contrary to public policy. (Docket #12 at 7–10). Tacuba

does not challenge the validity of the Arbitration Agreement as a specific term of the Enrollment. In the present case, *Buckeye* is controlling and dispositive: the Court will consider the arbitration clause severable from the Enrollment, and, without a specific challenge to the arbitration clause, the Court will consider it valid. *See, e.g.*, *Lombardi Ave. Waterpark, LLC v. D & C Hosp. Invs., LLC*, No. 08-C-32, 2008 WL 509222, at *1 (E.D. Wis. Feb. 22, 2008) (compelling arbitration and rejecting the plaintiff's argument that because the agreement as a whole "is void and unenforceable . . . the arbitration provision is also void and unenforceable").

Tacuba makes an additional argument opposing arbitration that is a slight variation of her wholesale attacks on the Enrollment. Similar to the foreclosed arguments above, Tacuba argues that the *assignment* to BCU of the RISC she entered into with AutoWorld was "void and contrary to Wisconsin law," and, because of this, it follows that "BCU cannot enforce an arbitration clause allegedly applicable to the RISC." (Docket #12 at 6). However, initially, like Tacuba's other arguments, this assertion of a "void assignment" does not challenge the arbitration clause specifically, but rather the assignment of the RISC as a whole. Such an argument may be rejected based on *Buckeye*. Further, the Court may dismiss this argument given that the authority Tacuba cites in support is distinguishable.

Tacuba cites *Zirpoli v. Midland Funding LLC*, No. 1:19-CV-01428, 2021 WL 2826720 (M.D. Pa. July 7, 2021), a district court case from Pennsylvania, for the proposition that, because Tacuba has alleged that the assignment of the RISC to BCU was void, the arbitration clause is also void. (Docket #12 at 6–7). In *Zirpoli*, the plaintiff and a company called OneMain entered into a loan agreement which contained an arbitration clause. 2021 WL 2826720, at *5. Later, after Zirpoli defaulted, OneMain attempted to assign the

Page 7 of 11
Case 2:21-cv-00618-JPS   Filed 09/09/21   Page 7 of 11   Document 15

contract to Midland Funding (not a party to the original contract) for collections. *Id.* at *1. The court found the assignment was void, and, because the assignment of the contract containing the arbitration agreement was void, Midland Funding could not benefit from the arbitration agreement contained in the contract, as there was no other basis to find privity between Midland Funding and Zirpoli. *Id.* at *5.

In the present case, the facts are distinguishable. Unlike in *Zirpoli*, BCU is not attempting to rely on an arbitration agreement assigned to it by a third party. Instead, BCU has contracted *directly* with Tacuba via the Enrollment, and it is the Enrollment between BCU and Tacuba that contains the Arbitration Agreement which BCU is seeking to enforce. In light of this key distinction, the legal analysis of *Zirpoli* has no application to this case. *Zirpoli* considered whether an arbitration agreement was validly assigned to Midland Funding such that Midland Funding could stand in the shoes of OneMain. Here, no such assignment of the Arbitration Agreement took place.

Finally, Tacuba requests that the Court allow limited discovery to take place regarding the contracts at issue in this case. Tacuba argues that relevant questions as to the contracts remain, including the following:

> where was the Enrollment Form executed (if it was); who enrolled Tacuba with the Enrollment Form (if someone did); is the Enrollment Form effective; was the person who enrolled Tacuba authorized to do so; whether Tacuba was informed of any relation between the RISC and the Enrollment Form and its incorporated terms; whether BCU executed the Enrollment Form and operated within its terms; whether the incorporated terms were provided or made available to Tacuba; and whether it was disclosed to Tacuba that the Enrollment Form and the incorporated terms would replace or supersede the terms of the RISC.

(Docket #12 at 11). But, again, these questions go to the validity of the Enrollment and Deposit Account Agreement as wholes—not the validity of the Arbitration Agreement. And, while these questions may be at the heart of the underlying litigation, they do not affect whether the Court will sever and enforce the Arbitration Agreement at this stage of the proceedings.

### 2.2 Scope of the Arbitration Agreement

Tacuba disagrees that the arbitration clause covers the scope of the present litigation. Specifically, Tacuba believes that the Arbitration Agreement, as incorporated by reference into the Enrollment, is too attenuated from the RISC, as assigned (improperly) to BCU, to apply to the present litigation: "BCU seeks to compel arbitration through the most circuitous of routes: an arbitration provision embedded in terms and conditions incorporated by reference into a document entirely unrelated to the underlying transaction to which BCU was not a party." (Docket #12 at 1–2). This, however, is the beginning and end of Tacuba's argument as to the scope of the Arbitration Agreement; Tacuba's brief instead primarily concerns the validity of the Enrollment.

"To determine whether a contract's arbitration clause applies to a given dispute, federal courts apply state-law principles of contract formation." *Gore v. Alltel Commc'ns, LLC*, 666 F.3d 1027, 1032 (7th Cir. 2012). However, "[o]nce it is clear . . . that the parties have a contract that provides for arbitration of some issues between them, any doubt concerning the scope of the arbitration clause is resolved in favor of arbitration as a matter of federal law." *Id.* "To this end, a court may not deny a party's request to arbitrate an issue unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *Id.* (internal quotations omitted). Under Wisconsin law,

Page 9 of 11
Case 2:21-cv-00618-JPS   Filed 09/09/21   Page 9 of 11   Document 15

(Docket #12 at 11). But, again, these questions go to the validity of the Enrollment and Deposit Account Agreement as wholes—not the validity of the Arbitration Agreement. And, while these questions may be at the heart of the underlying litigation, they do not affect whether the Court will sever and enforce the Arbitration Agreement at this stage of the proceedings.

### 2.2 Scope of the Arbitration Agreement

Tacuba disagrees that the arbitration clause covers the scope of the present litigation. Specifically, Tacuba believes that the Arbitration Agreement, as incorporated by reference into the Enrollment, is too attenuated from the RISC, as assigned (improperly) to BCU, to apply to the present litigation: "BCU seeks to compel arbitration through the most circuitous of routes: an arbitration provision embedded in terms and conditions incorporated by reference into a document entirely unrelated to the underlying transaction to which BCU was not a party." (Docket #12 at 1–2). This, however, is the beginning and end of Tacuba's argument as to the scope of the Arbitration Agreement; Tacuba's brief instead primarily concerns the validity of the Enrollment.

"To determine whether a contract's arbitration clause applies to a given dispute, federal courts apply state-law principles of contract formation." *Gore v. Alltel Commc'ns, LLC*, 666 F.3d 1027, 1032 (7th Cir. 2012). However, "[o]nce it is clear . . . that the parties have a contract that provides for arbitration of some issues between them, any doubt concerning the scope of the arbitration clause is resolved in favor of arbitration as a matter of federal law." *Id.* "To this end, a court may not deny a party's request to arbitrate an issue unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *Id.* (internal quotations omitted). Under Wisconsin law,

courts interpreting contractual language should do so in order to "ascertain and give effect to the intent of the parties." *Blum v. 1st Auto & Cas. Ins. Co.*, 786 N.W.2d 78, 83 (Wis. 2010).

In the present case, the parties' Arbitration Agreement is broadly worded and covers "any claim or dispute" between the parties "arising from or related in any way to" the agreement, or any account, product or service Tacuba has with BCU. (Docket #11-1 at 5). "The Seventh Circuit has repeatedly construed the phrases 'arising out of' and 'relating to' in arbitration agreements very broadly." *Tuttle v. Sallie Mae, Inc.*, No. 1:13-CV-183 JD-RBC, 2014 WL 545379, at *5 (N.D. Ind. Feb. 11, 2014) (citing *Gore*, 666 F.3d at 1033; *Kiefer Specialty Flooring, Inc. v. Tarkett, Inc.*, 174 F.3d 907, 909 (7th Cir. 1999)). Indeed, "an arbitration agreement may reach disputes 'having their origin or genesis in contract, whether or not they implicate interpretation or performance of the contract per se.'" *Id.* (quoting *Gore*, 666 F.3d at 1033).

Here, Plaintiff challenges BCU's ability to provide her the "services" that BCU has provided her for the last four years—namely, a loan for her vehicle purchase. This dispute, therefore, falls squarely within the scope of the Arbitration Agreement.

3. **CONCLUSION**

In sum, the Court finds that the arbitration provision, as incorporated by the Enrollment, is valid and applies to the claims in this action. The Court will, therefore, grant BCU's motion and compel Tacuba to arbitrate. Rather than stay the action, however, the Court will dismiss it. Should Plaintiff persuade the arbitrator that arbitration is not appropriate for some reason, she may return to this Court. Until then, Tacuba must proceed with arbitration.

Page 10 of 11
Case 2:21-cv-00618-JPS    Filed 09/09/21    Page 10 of 11    Document 15

Accordingly,

**IT IS ORDERED** that Defendant's motion to stay proceedings and compel arbitration (Docket #11) be and the same is hereby **GRANTED in part**;

**IT IS FURTHER ORDERED** that Plaintiff is compelled to arbitrate her claims in this action with Defendant; and

**IT IS FURTHER ORDERED** that this action be and the same is hereby **DISMISSED without prejudice**.

The Clerk of the Court is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin, this 9th day of September, 2021.

BY THE COURT:

_____
J.P. Stadtmueller
U.S. District Judge